# In the United States Court of Federal Claims

No. 08-768C
Filed: March 31, 2009
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
|  |  |
|---|---|
| | \* |
| RESOURCE CONSERVATION | \* |
| GROUP, LLC, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES DEPARTMENT | \* |
| OF NAVY, | \* |
| | \* |
| Defendant. | \* |
| | \* |

Administrative Dispute Resolution Act of
  1996, Pub. L. No. 104-320, codified at 28
  U.S.C. § 1491(b);
Administrative Procedure Act,
  5 U.S.C. §§ 701(a)(2), 706;
Motion to Dismiss, RCFC 12(b)(1), 12(b)(6);
Tucker Act, 28 U.S.C. § 1491(a)(1), (b)(1).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Zhen Zhang**, Rich & Henderson, P.C., Annapolis, Maryland, Counsel for Plaintiff.

**Christopher Andrew Bowen**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN, *Judge*.**

## I.    RELEVANT FACTUAL BACKGROUND.[1]

In 1910, a typhoid fever epidemic swept through Annapolis, Maryland, affecting several United States Naval Academy ("Naval Academy") midshipmen. *See* Michael Janofsky, *Midshipmen To Get Milk Through Middleman*, N.Y. TIMES, July 19, 1998.  The epidemic was traced to a local milk distributor.  *Id.*  In response, the United States Congress authorized the Naval Academy to establish and operate a dairy.  *Id.*  In 1913, the Naval Academy purchased land in Gambrills, Maryland, fifteen miles from the Naval Academy in Annapolis, Maryland, for this purpose.  *Id.*

---

[1] The facts cited herein were derived from: the October 24, 2008 Complaint ("Compl.") and attached Exhibits ("Pl. Ex. 1-2"), and the Defendant ("Government")'s December 23, 2008 Motion To Dismiss ("Gov't Mot.") and attached Exhibit ("Gov't Ex. 1").

Over time, the Naval Academy dairy operation expanded, and consumption reached almost 1,000 gallons of milk per day.  *Id.*

In the 1990's, the Naval Academy determined that it would be cheaper to purchase milk commercially.  *Id.*  Consequently, Congress included a provision in the Defense Authorization Act for Fiscal Year 1998 that authorized closure of the dairy operations.  *Id.*; *see also* 10 U.S.C. § 6976(a) (codifying the Naval Academy's authority to "terminate or reduce the dairy or other operations conducted at the Naval Academy dairy farm located in Gambrills, Maryland[,]" so long as its "rural and agricultural nature" is maintained).  From 2000 to January 2005, the Naval Academy leased the dairy to Horizon Organic Holding Corp., a Boulder, Colorado-based milk producer.  *See* International Dairy Food's Association's website, *available at* http://www.idfa.org/dbrief/dbrief012804.html (last visited March 30, 2009).

On November 28, 2005, the Navy issued a Request of Interest, No. LO-10019, to solicit proposals to lease the property where the dairy was located.  *See* Compl. ¶ 5.  On January 16, 2006, Resource Conservation Group, LLC ("Plaintiff") expressed interest in leasing the property.[2]  *See* Pl. Ex. 1.  Thereafter, the Navy issued a Notice of Availability for Lease, No. N4008007RP00005, and requested that all bids be submitted by March 19, 2007.  *See* Compl. ¶ 10.

On February 6, 2007, interested bidders toured the property, as Section 6.1 of the Request for Proposals permitted.  *See* Gov't Mot. at 3; Gov't Ex. at 13, 15.  With the Navy's permission, Plaintiff entered the property a second time "to survey and test the area for the presence of sand and gravel."  Compl. ¶ 6.  Plaintiff then prepared a site analysis, produced mining plans, and submitted a formal lease proposal prior to the March 19, 2007 deadline.  *Id.*

On April 30, 2007, the Navy Contracting Officer informed Plaintiff that its proposal did not "fall within the scope of the [November 28, 2005] solicitation," because disposal of real property was prohibited.  *See* Pl. Ex. 2; *see also* Compl. ¶ 8.  Accordingly, Plaintiff's proposal would not be considered.  *See* Compl. ¶ 8.

Plaintiff requested a debriefing, and the parties met on September 13, 2007.  *Id.* ¶ 9.  At the debriefing, Plaintiff reiterated an intention to "use the property for sand and gravel mining."  *Id.*  The Navy responded that "disposal" of real property was prohibited by 10 U.S.C. § 6976 and that the Navy was under no obligation to inform a "bidder" that the proposed use did not qualify for review or evaluation.  *Id.*

---

[2] The Expression of Interest was made on behalf of the Chaney-Reliable Joint Venture, comprised of Chaney Enterprises and the Reliable Contracting Company.  *See* Pl. Ex. 1. Subsequently, the Chaney-Reliable Joint Venture was organized as the Resource Conservation Group, LLC.  *See* Gov't Mot. at 2 n. 2.

## II.     PROCEDURAL HISTORY.

On October 24, 2008, Plaintiff filed a Complaint in the United States Court of Federal Claims, alleging breach of an implied contract of fair and honest consideration and violation of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA").  *See* Compl.  ¶¶ 14-20.  The Complaint requests recovery of bid preparation costs and fees in the amount of $500,000.  *Id.*

On December 23, 2008, the Government filed a Motion To Dismiss Plaintiff's Complaint. On January 23, 2009, Plaintiff filed an Opposition ("Pl. Opp."), together with an Exhibit (Pl. Opp. Ex."), and requested oral argument.  On January 29, 2009, the Government filed an Unopposed Motion For Enlargement Of Time to file a Reply, that the court granted.  On February 13, 2009, the Government filed a Reply ("Gov't Reply").

On March 12, 2009, the court convened an oral argument.  *See* 3/12/09 TR 1-27.

## III.    DISCUSSION.

### A.     Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  *See* 28 U.S.C. § 1491.  This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  *Id.* § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists."  *See United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages.  *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").  The burden of establishing jurisdiction falls upon the plaintiff.  *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, §§ 12(a), (b), 110 Stat. 3870 (1996), codified at 28 U.S.C. § 1491(b), also authorizes the United States Court of Federal Claims to "render judgment on an action by an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. §

1491(b)(1); *see also Banknote Corp. of Am., Inc.* v. *United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("The [United States] Court of Federal Claims has jurisdiction to review both pre-award and post-award bid protests pursuant to 28 U.S.C. § 1491(b), enacted as part of the Administrative Dispute Resolution Act of 1996[.]").

The October 24, 2008 Complaint states that the court has jurisdiction over this dispute, pursuant to 28 U.S.C. § 1491(a)(1),[3] "as a result of an implied contract with the United States via the U.S. Department of Navy," and pursuant to 28 U.S.C. § 1346(a)(2),[4] "as the damages claimed exceed[] Ten Thousand Dollars ($10,000.00) where the United States is the defendant." Compl. ¶¶ 3-4. Plaintiff's jurisdictional claims are addressed below.

---

[3] Section 1491(a)(1) of Title 28 of the United States Code provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

28 U.S.C. § 1491(a)(1).

[4] Section 1346(a)(2) of Title 28 of the United States Code provides:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . .

(2) Any other civil action or claim against the United States, *not exceeding $10,000 in amount*, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

28 U.S.C. § 1346(a)(2) (emphasis added).

### B. Standing.

The United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Specifically, to establish standing, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl, Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61). In addition, pursuant to the Tucker Act, an "interested party" with standing to bring a bid protest action in the United States Court of Federal Claims must be: an actual or prospective bidder or offeror with a direct economic interest that would be affected by the award of the contract or by the failure to award the contract. *See Rex Serv. Corp.* v. *United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).

The October 24, 2008 Complaint alleges that Plaintiff has suffered damages of $500,000 in bid preparation costs that are "concrete" and "particular." *See* Compl. ¶¶ 16, 20. The Complaint also alleges that Plaintiff's "injury in fact" is "traceable to the challenged action of the defendant" and can be redressed by the court. *Id.*; *see also Lujan*, 504 U.S. at 560-61. In addition, Plaintiff is an actual bidder with a direct economic interest in the government action at issue. For these reasons, the court has determined that Plaintiff is an "interested party" with standing to file this action under the Tucker Act.

### C. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

**D.      Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(6).**

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). In order to survive a motion to dismiss, however, the court "[does] not requir[e] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1960; *see also* RCFC 12(b)(6) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).

**IV.     THE GOVERNMENT'S DECEMBER 23, 2008 MOTION TO DISMISS, PURSUANT TO RCFC 12(b)(1).**

**A.      Count I - Alleged Breach Of An Implied Contract Of Fair And Honest Consideration.**

Count I of the October 24, 2008 Complaint alleges that the Government "created an implied contract of honest and fair consideration of [Plaintiff's] bid by inducing [Plaintiff] to prepare a bid and by inviting [Plaintiff] to bid, knowing the substantial requirements of its bid proposal [and] knowing that [Plaintiff] would propose a sand and gravel mine operation[.]" Compl. ¶ 15. Therefore, it must be "necessarily implied that [the Government] promised to give [Plaintiff's] bid a fair and impartial consideration." *Id.*

In addition, Count I alleges that the Government "breached the implied contract to judge honestly and fairly all bids submitted in response to the solicitation[,] by disqualifying [Plaintiff] with information that [the Government] knew or should have known, but failed to disclose to [Plaintiff], before [Plaintiff] incurred the expenses of composing and submitting the formal proposal." *Id.* ¶ 16.

Count I also appears to allege that the Government misapplied 10 U.S.C. § 6976,[5] because, according to Plaintiff, the statute does not prohibit leasing to a mining operation. *Id.* ¶ 15. Even if the statute did prohibit that operation, Plaintiff is entitled to bid preparation costs, since the Government did not comply with the "obligation of fair dealing," when it failed to apprise all potential bidders of its interpretation of 10 U.S.C. § 6976. *Id.* ¶ 16.

## 1.    The Government's Argument.

The Government argues that Plaintiff's reliance on 28 U.S.C. § 1491(a)(1), authorizing the United States Court of Federal Claims to adjudicate claims "founded either upon . . . express or implied contract[s] with the United States," is misplaced. *See* Gov't Mot. at 6. The court's jurisdiction over implied-in-fact contracts in bid protest cases was superceded when the Tucker Act was amended by the ADRA, that expressly authorized jurisdiction over bid protests. *Id.*; *see also*

---

[5] Section 6976 of Title 10 of the United States Code, titled "Operation of Naval Academy dairy farm," states:

(a) Discretion regarding continued operation. --
    (1) Subject to paragraph (2), the Secretary of the Navy may terminate or reduce the dairy or other operations conducted at the Naval Academy dairy farm located in Gambrills, Maryland.
    (2) Notwithstanding the termination or reduction of operations at the Naval Academy dairy farm under paragraph (1), the real property containing the dairy farm (consisting of approximately 875 acres) –
        (A) may not be declared to be excess real property to the needs of the Navy or transferred or otherwise disposed of by the Navy or any Federal agency; and
        (B) shall be maintained in its rural and agricultural nature.
(b) Lease authority. --
    (1) Subject to paragraph (2), to the extent that the termination or reduction of operations at the Naval Academy dairy farm permit, the Secretary of the Navy may lease the real property containing the dairy farm, and any improvements and personal property thereon, to such persons and under such terms as the Secretary considers appropriate.  In leasing any of the property, the Secretary may give a preference to persons who will continue dairy operations on the property.
    (2) Any lease of property at the Naval Academy dairy farm shall be subject to a condition that the lessee maintain the rural and agricultural nature of the leased property.

10 U.S.C. § 6976 (a), (b).

28 U.S.C. § 1491(b)(1).[6]  Section 1491(b)(1) of the Tucker Act "specifically is oriented toward bid protest claims, raising a presumption that Congress intended that its provisions and limitations control in bid protest situations. . . . [B]ecause section 1491(b)(1) encompasses all claims that could have been brought under the former statute and more, it obviates the need for implied-contract theory."  *Lion Raisins Inc.* v. *United States*, 52 Fed. Cl. 115, 120 (2002).  Therefore, "the implied in fact contract theory no longer serves as a basis of recovery for bid protest actions, and Count I of [Plaintiff's] [C]omplaint should be dismissed pursuant to RCFC 12(b)(1)."  Gov't Mot. at 6-7; *see also* 3/12/09 TR at 3-4, 6.

### 2.   Plaintiff's Response.

Plaintiff responds that the October 24, 2008 Complaint "clearly states that the [United States] Court of Federal Claims has jurisdiction over this lawsuit under 28 U.S.C. § 1491(a)(1) pursuant to the implied contract to consider bids fairly."  Pl. Opp. at 13.  Prior to 1996, Section 1491(a)(1) authorized the court to adjudicate "'any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.'"  *Id.* (quoting 28 U.S.C. § 1491(a)(1) (1994) (repealed)).  Specifically, Section 1491(a)(3) "allowed 'declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief' for contract claims brought before the contract is awarded."  *Id.* (quoting 28 U.S.C. § 1491(a)(3) (1994) (repealed)).

Therefore, Plaintiff contends that the ADRA "did not change [Section] 1491(a)(1), but [only] repealed [S]ection 1491(a)(3) and in its place enacted [Section] 1491(b)."  *Id.*  Section 1491(b)(1) vests the court with jurisdiction to adjudicate "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement."  28 U.S.C. § 1491(b)(1).  The *Lion Raisins* court held that although Section 1491(b)(1) supersedes the implied-in-fact contract claim, that ruling "'encompasses all claims that could have been brought under the former statute and more[.]'"  *Id.* at 13-14 (quoting

---

[6] Section 1491(b)(1) of Title 28 of the United States Code provides:

Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).

*Lion Raisins*, 52 Fed. Cl. at 120). Moreover, *Lion Raisins* "explicitly stated that [Section] 1491(a)(1) does not prohibit the claim of implied contracts." *Id.* at 14.

The United States Court of Appeals for the Federal Circuit has not decided whether a cause of action for an implied-in-fact contract to fairly and honestly consider bids survives the passage of the ADRA. *Id.* (citing *Block* v. *United States*, 66 Fed. Cl. 68, 77 n.11 (2005)). Therefore, the Government's argument that "Congress could not have intended for implied contract claims to survive the 1996 amendments[,] because the amendments allowed the same causes of action and relief permitted before" is not dispositive. *Id.*

This bid protest, however, "belongs to a group of claims that were included by the pre-1996 statutory language but are now limited by [Section 1491(b)(1)]." *Id.* Section 1491(b)(1) "on its face limits jurisdiction to bid protests 'in connection with a procurement or a proposed procurement.'" *Id.* (quoting 28 U.S.C. § 1491(b)(1)). Bid solicitations for "the lease of property rights do not involve procurement of goods and services; therefore, the theory that Section 1491(b)(1) encompasses the same causes of action and relief as the claims available pre-1996 is not persuasive in this case." *Id.* Moreover, the cases cited by the Government are inapplicable, because they "do not address lease[s] of real property." *Id.* at 15.

Accordingly, the October 24, 2008 Complaint "appropriately invokes the [c]ourt's jurisdiction over all express or implied contracts with the United States specified in [Section] 1491(a)(1) and all claims that could have been brought under the former statute." *Id.* at 14-15 (internal quotation omitted). "To find no jurisdiction exist[s] under 28 U.S.C. § 1491(a)(1) would mean this section serves no purpose and should have been repealed in 1996." *Id.* at 15 (citing *Client Network Services, Inc.* v. *United States*, 64 Fed. Cl. 784, 788 (2005)). Congress, however, "did not intend such a result as Section 1491(a)(1) did not change." *Id.*

Finally, "[i]f the Court determines that 28 U.S.C. § 1491(b)(1) should be more broadly interpreted to include bid protests involving land leases, which it has done in the past," Plaintiff requests permission to amend the Complaint accordingly. *Id.* at 16 n. 1 (citing *Catholic University of America* v. *United States*, 49 Fed. Cl. 795 (2001)); *see also* 3/12/09 TR at 12.

**3.    The Government's Reply.**

The Government replies that Plaintiff "failed to refute that the implied contract theory of recovery is no longer viable since the passage of the Administrative Dispute Resolution Act." Gov't Reply at 2. Plaintiff argued that, absent an action for an implied contract, disappointed bidders for non-procurement contracts would have no recourse. *Id.* Plaintiff, however, "failed to cite a single case in which this Court exercised jurisdiction under an implied contract theory over a non-procurement contract after the passage of the ADRA." *Id.* Plaintiff also "failed to recognize that where an express or implied contract exists between a party and the United States, [28 U.S.C.] § 1491(b)(1) provides the Court with jurisdiction to entertain a claim for breach of the covenant of good faith and fair dealing that applies to all contracts." *Id.*

Plaintiff further failed to appreciate that Section 1491(b)(1) authorizes the United States Court of Federal Claims to adjudicate only three types of bid protests: (1) pre-award protests (*i.e.*, an action objecting to the solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of a contract); (2) post-award protests (*i.e.*, an action objecting to the award of a contract); and (3) actions objecting to "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id*. at 3 (quoting *OTI America, Inc.* v. *United States*, 68 Fed. Cl. 108, 113 (2005)). Disappointed bidders for non-procurement contracts, however, are not without recourse, because they may bring suit under either the first or second clause, challenging the solicitation either pre- or post-award. *Id*. at 3-4; *see also* 3/12/09 TR at 3, 24-25.

In this case, Plaintiff "failed to refute the Government's argument that the reasoning of the decisions which have found that the ADRA superceded the older theory of an implied contract of fair and honest consideration is superior to those which have continued to recognize the older cause of action." *Id*. at 4. Furthermore, although Plaintiff cites *Client Network Services Inc.* v. *United States*, 64 Fed. Cl. 784 (2005), for the proposition that courts should not ignore Congress' very purpose in mandating jurisdiction, the United States Court of Federal Claims would ignore Congress' "very purpose" if it recognized an action for an implied contract of fair and honest consideration where Congress chose to "define explicitly [under the ADRA] the standards and steps that govern a bid protest." *Id*. at 4-5 (citing *Lion Raisins*, 52. Fed. Cl. at 120 (quotation omitted)).

### 4.    The Court's Resolution.

First,  Section 1346(a)(2) of Title 28 of the United States Code, known as the "Little Tucker Act," "standing alone, does not create a right to money damages." *Locke* v. *United States*, 77 Fed. Cl. 460, 466 (2007); *see also Litzenberger* v. *United States*, 89 F.3d 818, 820 (Fed. Cir. 1996) ("Although [28 U.S.C. § 1346(b)(2)] waives sovereign immunity, it does not create any substantive right enforceable against the United States for money damages. . . . Thus, for a claim to be based on the Little Tucker Act, it must be founded on a provision that can fairly be interpreted as mandating compensation from the United States."). Accordingly, Section 1346(a)(2) does not authorize the court to adjudicate the claims alleged in the October 24, 2008 Complaint.

Second, regarding 28 U.S.C. § 1491(a)(1), prior to the 1996 enactment of the ADRA, the United States Court of Federal Claims reviewed bid protests as if they were implied-in-fact contracts. *See Information Sciences Corp*. v. *United States*, 85 Fed. Cl. 195, 204 (2008) (citing *Southfork Sys., Inc.* v. *United States*, 141 F.3d 1124, 1132 (Fed. Cir. 1998) (*en banc*) (Under the Tucker Act, "[t]he jurisdictional basis [for bid protests] is the alleged breach of an implied contract to have the involved bids fairly and honestly considered.") (internal quotation omitted)). The passage of the ADRA, however, "remedied this situation by explicitly providing that a protester had an independent cause of action to 'object[] to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement.'" *Id*. at 204 (quoting 28 U.S.C. § 1491(b)(1)). The judges of the United States Court of Federal Claims, however, have

10

differed on the issue of whether the implied-in-fact contract doctrine, as it relates to bid protests, survived the enactment of the ADRA.[7]

_____

[7] *Compare Biltmore Forest Broad. FM, Inc.* v. *United States*, 80 Fed. Cl. 322, 334 (2008) (Merow, J.) ("With the enactment of ADRA, it was no longer necessary for an unsuccessful bidder to base the court's protest jurisdiction on a breach of an implied contract to consider bids fairly[.]"); *Block* v. *United States*, 66 Fed. Cl. 68, 77 (2005) (Firestone, J.) ("The plaintiff's theory of an implied-in-fact contract to fairly and honestly consider his proposal no longer gives rise to a potential claim."); *Lion Raisins, Inc.* v. *United States*, 52 Fed. Cl. 115, 120 (2002) (C. Miller, J.) ("[N]o logical reason would support the presumption that Congress intended for the implied-contract cause of action to survive the enactment of the ADRA."); *with Hamilton Sundstrand Power Sys.* v. *United States*, 75 Fed. Cl. 512, 516 (2007) (Bruggink, J.) ("[W]e have previously held that, even though bid protest jurisdiction in this court is no longer premised on a theory of an implied-in-fact contract, it is still recognized that the issuance of a competitive solicitation which generates responsive offers gives rise to an implied contract of fair dealing.") (citation and internal quotation omitted); *L-3 Commc'ns Intergrated Sys., L.P.* v. *United States*, 79 Fed. Cl. at 453, 461-62 (2007) (Williams, J.) ("Although ADRA obviated the need to base the [United States Court of Federal Claims'] protest jurisdiction on a breach of this implied-in-fact contract to consider bids fairly, the statute in no way eliminated a protestor's ability to challenge arbitrary and capricious conduct, such as bias or an unfair evaluation, which would also constitute a breach of the implied contract of fair dealing."); *Hunt Bldg., Co.* v. *United States*, 61 Fed. Cl. 243, 273 (2004) (Williams, J.) ("This Court's bid protest jurisdiction is no longer premised on the theory of the breach of an implied-in-fact contract. Nonetheless, it has long been held and is still recognized that the issuance of a competitive solicitation which generates responsive offers gives rise to an implied contract of fair dealing."); *Phoenix Air Group* v. *United States*, 46 Fed. Cl. 90, 100 (2000) (Horn, J.) ("The United States Court of Appeals for the Federal Circuit has stated that the Tucker Act's grant of jurisdiction extends to . . . bid protests, challenging the proposed award of contracts based on alleged improprieties in the procurement process. In such cases, jurisdiction is based upon an alleged breach of an implied contract to have the involved bids fairly and honestly considered.") (citations and internal quotations omitted); *Unified Architecture & Eng'g, Inc.* v. *United States*, 46 Fed. Cl. 56, 60-61 (2000) (Tidwell III, J.) ("Although in many cases the ADRA amendments obviate the need to frame a bid protest claim as a breach of implied-in-fact contract claim, the amendments do not supercede the implied contract theory of good faith and honest consideration as defendant contends."); *Forestry Surveys & Data* v. *United States*, 44 Fed. Cl 485, 491 (1999) (Gibson, J.) ("Under our bid protest jurisdiction, the court hears challenges brought by disappointed bidders for proposed government contracts alleging impropriety in the procurement process. Jurisdiction in such cases is premised on the existence of an implied-in-fact contract between the government and the bidder to 'fairly and honestly' consider all bids.") (citations omitted); *Aero Corp.* v. *United States*, 38 Fed. Cl. 739, 748 (1997) (Futey, J.) ("Whenever defendant solicits bids, an implied-in-fact contract is created between defendant and the bidders on the underlying contract . . . It is this implied contract which forms the

On two prior occasions, the United States Court of Appeals for the Federal Circuit has declined to resolve these different perspectives. *See Emery Worldwide Airlines, Inc.* v. *United States*, 264 F.3d 1071, 1082 n. 9 (Fed. Cir. 2001) ("[W]e decline to address whether the implied contract theory survives the ADRA."); *see also Impresa Construzioni Geom. Domenico Garufi* v. *United States*, 238 F.3d 1324, 1332 n. 6 (Fed. Cir. 2001) ("Although it has been argued that the implied contract theory survives the 1996 amendment [of the ADRA] . . . we need not decide this issue.") (citation omitted).

The undersigned judge, however, also observed that "[t]he ADRA did not make any changes to 28 U.S.C § 1491(a)(1), the foundational jurisdictional statute for the Unites States Court of Federal Claims[,]" and the text of the ADRA does not explicitly state whether the implied-in-fact contract doctrine survives the bill's enactment. *See Information Sciences*, 85 Fed. Cl. at 205. But, prior to the enactment of the ADRA, the Government's conduct in bid protest cases was evaluated as an implied-in-fact contract under a "fairly and honestly considered" standard. *Id*. (citations omitted). With the enactment of the ADRA, Congress changed the substantive standard and directed that the Government's conduct be reviewed under the APA's "arbitrary, capricious, an abuse of direction, or otherwise not in accordance with the law" standard. *Id*.; *see also* 28 U.S.C. 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in [S]ection 706 of [T]itle 5 [of the APA]."). Therefore, the court reasoned, if 28 U.S.C. § 1491(a)(1) reserved the right to bring a bid protest under the implied-in-fact contract doctrine, "that claim would be evaluated under a different standard than a claim brought under the express bid protest jurisdiction of 28 U.S.C. § 1491(b)." *Information Sciences*, 85 Fed. Cl. at 205. The legislative history of the ADRA suggests that one of the goals of the Act was to eliminate this very situation. *Id*.[8]

---

jurisdictional basis for an exercise of this court's equitable authority.") (citations and internal quotations omitted). The undersigned judge continues to conclude that "the more persuasive view is that the ADRA divested the court of jurisdiction over common law claims in bid protest cases." *Information Sciences*, 85 Fed. Cl. at 205 (citations omitted).

[8] The court relied on Senator Cohen's statement in the Senate debate that the goal of the ADRA was to "develop a uniform national law on bid protest issues and end the wasteful practice of shopping for the most hospitable forum." 85 Fed. Cl. at 205 n. 9 (quoting 142 Cong. Rec. S6155-01, 1996 WL 315422 (June 12, 1996)). In addition, the court relied on a letter by Andrew Fois, Assistant Attorney General, Office of Legislative Affairs, United States Department of Justice, to Congress requesting legislation that will "impose a similar, if not identical, standard" across all federal judicial fora. *Id*. Quite clearly, Section 1491(b)(4) addressed this concern by mandating the Section 706 APA standard of review. *Id*. Professor Nash, however, was not so impressed. *See* Ralph C. Nash, *The Implied Contract To Fairly And Honestly Consider An Offer: Now You See It, Now You Don't*, 23 No. 2 NASH & CIBINIC REPORT ¶ 5 (Feb. 2009) ("We believe [*Information Sciences* reaches] the wrong conclusion[, because the] legislative history is totally underwhelming[.]"). Professor Nash did recognize that the "[United States] Court of Appeals for the Federal Circuit has not ruled on this specific jurisdictional issue[,]" and encouraged the United

For these reasons, the court also has determined in this case that the United States Court of Federal Claims does not have jurisdiction under 28 U.S.C. § 1491(a)(1) to adjudicate the alleged breach of an implied-in-fact contract arising in the context of a bid protest.

The only remaining issue is whether the court has jurisdiction, under 28 U.S.C. § 1491(b)(1), to adjudicate bid protests involving leases of land where the Government is the lessor. *See* Pl. Opp at 16 n. 1. In *Catholic University of America* v. *United States*, 49 Fed. Cl. 795 (2001), the court considered whether "28 U.S.C. § 1491(b) [] is limited to suits challenging the Government's procurement activities, and does not extend to suits involving the Government's sale or lease of real property." *Id*. at 799. The court examined the language "in connection with a procurement or proposed procurement," set forth in 28 U.S.C. § 1491(b)(1), and accepted the Government's construction that this clause:

> is designed to modify each of the phrases that precede it, such that an interested party may object to: (i) a solicitation in connection with a procurement or proposed procurement; (ii) a proposed award in connection with a procurement or proposed procurement; (iii) an actual award in connection with a procurement or proposed procurement; or (iv) any alleged violation of statute or regulation in connection with a procurement or proposed procurement.

*Id*. at 799. Therefore, the court concluded that 28 U.S.C. § 1491(b) is "a provision governing the procurement process." *Id*. at 800. The *Catholic University* court, however, declined to adopt the Government's corollary argument that "procurement" should be construed narrowly. *Id*. ("Because § 1491's legislative history offers such an unequivocal expression of congressional purpose, we think it reasonable - indeed, necessary - to read the word 'procurement' in [S]ection 1491 not in the limited sense of referring just to the Government's acquisition of supplies or services, but rather as a more general reference to the process by which the Government endeavors to fulfill any of its needs through the mechanics of a solicitation and contract award."). Instead, the court held that the United States Court of Federal Claims' bid protest jurisdiction under 28 U.S.C. § 1491(b)(1) extends "to any pre-award challenge to the Government's conduct of a solicitation or contract award *irrespective of whether the Government was engaged in the acquisition or the distribution of property*." *Id*. (emphasis added). Accordingly, that court exercised jurisdiction over a bid protest of a government solicitation inviting proposals for lease-based development of federal land, holding that, since the solicitation was issued "in connection with a proposed procurement," 28 U.S.C. § 1491(b)(1) authorized adjudication of all bid protests arising thereunder. *Id*. at 799-800. This decision, however, was never appealed and is not controlling. *See West Coast General Corp.* v. *Dalton*, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.").

_____

States Court of Appeals for the Federal Circuit to resolve the different opinions among the judges of the United States Court of Federal Claims. *Id*.

13

The court construes the scope of 28 U.S.C. § 1491(b)(1) in a different manner.  Section 1491(b)(1) does not define "procurement" or "proposed procurement."  *See* 28 U.S.C. § 1491(b)(1).  In *Distributed Solutions, Inc.* v. *United States*, 539 F.3d 1340 (Fed. Cir. 2008), however, the United States Court of Appeals for the Federal Circuit looked to the definition of "procurement" in 41 U.S.C. § 403(2), *i.e.*, "a subsection of the statutory provisions related to establishing the Office of Federal Procurement Policy in the Office of Management and Budget," that provides "overall direction for federal procurement policies, regulations, procedures, and forms."  *Id.* at 1346 (citations omitted).  Section 403(2) defines "procurement" to "include[] all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."  41 U.S.C. § 403(2).  Therefore, our appellate court held that "in connection with a procurement or proposed procurement," by definition involves "a connection with any stage of the federal contracting *acquisition process*, including 'the process for determining a *need for property or services*.'"  *Distributed Solutions*, 539 F.3d at 1346 (emphasis added).

In this case, the Government is not acquiring any property or services to fulfill a need.  *See Distributed Solutions*, 539 F.3d at 1346.  In addition, the Government is not utilizing appropriated funds.  *See* 41 U.S.C. § 403(16) ("acquisition" is the "process of acquiring, with appropriated funds"); *see also* 48 C.F.R. § 2.101 (defining "acquisition" as "the acquiring by contract with appropriated funds of supplies or services[.]").  Significantly, the Federal Acquisition Regulation 2.101 defines "procurement" by cross reference, *i.e.*, "(*see* 'acquisition')." 48 C.F.R. § 2.101.  Since the Government is not "acquiring," 28 U.S.C. § 1491(b)(1) also does not convey jurisdiction over this activity.

Moreover, the distinction between the Government *leasing* government-owned property and the Government *acquiring* property or services via purchase or lease has been recognized by the Government Accountability Office.  *See Meyers Companies, Inc.*, 97-1 CPD P 148 (Comp. Gen. April 23, 1997) ("As a general rule, protests concerning offers to sell or lease government-owned real property are not for consideration under our Office's bid protest function.  Under the Competition in Contracting Act of 1984 (CICA), 31 U.S.C. § 3551 (1994), our Office is authorized to review protests concerning proposed contracts for the 'procurement of property or services' by a federal agency.  Transactions for the lease of federal land do not generally involve a procurement of property or services, and therefore are not encompassed by our CICA bid protest authority.").  Therefore, the lease of land *by* the Government is not a government acquisition and cannot be made "in connection with a procurement or proposed procurement."  *See* John Cibinic, Jr. & Ralph C. Nash, Jr., FORMATION OF GOVERNMENT CONTRACTS 3, 13-14 (3d ed. 1998) (contrasting the "rental of real property" *by* the Government as a procurement (*i.e.*, an "acquisition") from the "sale of property" (or "disposal" of real property) as a "nonprocurement transaction" (*i.e.*, a non-acquisition transaction)).

14

For these reasons, the court has determined that 28 U.S.C. § 1491(b)(1) does not authorize the adjudication of bid protests concerning land leases where the Government is the lessor. Accordingly, Count I of the October 24, 2008 Complaint is dismissed for lack of subject matter jurisdiction. *See* RCFC 12(b)(1).

### B.    Count II - Alleged Violation Of The Administrative Procedure Act.

Count II of the October 24, 2008 Complaint also alleges that the Government's actions were arbitrary and capricious and in violation of the Administrative Procedure Act, 5 U.S.C. § 706. *See* Compl. ¶¶ 17-20.   The Complaint alleges that Plaintiff conformed to the requirements of the invitation to bid. *Id*. ¶ 19.   Therefore, Plaintiff's proposal should not have been rejected as nonresponsive. *Id*.  But for the Government's arbitrary and capricious actions, Plaintiff would have had a substantial chance of being awarded the lease. *Id*. ¶ 20.

### 1.    The Government's Argument.

The Government argues that Count II of the October 24, 2008 Complaint should be dismissed, pursuant to RCFC 12(b)(1), because "the APA is not a money mandating statute." Gov't Mot. at 5-6. Indeed, for this reason, the United States Court of Federal Claims has never adjudicated suits based on the APA, despite the fact that the APA's standards are applied under the ADRA. *Id*. at 4.

### 2.    Plaintiff's Response.

Although Count II alleges that the Government violated the APA, the Complaint does not rely on the APA as a basis for the court's jurisdiction. *See* Pl. Opp. at 13. The APA "is only the standard which applies to review an implied contract of fair and honest consideration." *Id*. The United States Court of Federal Claims "has jurisdiction over contract claims derived from the APA, pursuant to the Tucker Act, 28 U.S.C. § 1491, which was revised in 1996." *Id*.

### 3.    The Government's Reply.

The Government replies that the aforementioned statement clarifies that Plaintiff is relying on an implied-in-fact contract theory. *See* Gov't Reply at 2 n. 1 (citing Pl. Opp. at 13).  Plaintiff, however, has "failed to refute that [this] theory of recovery is no longer viable since the passage of the Administrative Disputes Resolution Act." *Id*. at 2.

### 4.    The Court's Resolution.

In 1996, the United States Congress enacted the ADRA, providing that "the [United States] Court of Federal Claims . . . shall have . . . jurisdiction over bid protest actions, and . . . 'shall review the agency's decision pursuant to the standards set forth in [S]ection 706 of [T]itle 5.'" 28 U.S.C. § 1491(b). Such protests were to be evaluated pursuant to an APA standard. *See Impresa*, 238 F.3d

at 1332 ("Under the APA standards . . . a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."). It is well established that the United States Court of Federal Claims, however, does not have jurisdiction to review an agency decision under the APA. *See Martinez* v. *United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (holding that the United States Court of Federal Claims does not have APA jurisdiction); *see also Crocker* v. *United States*, 37 Fed. Cl. 191, 197 (1997) (same). Therefore, the only forum that can adjudicate Plaintiff's challenge to the Navy's interpretation of 10 U.S.C. § 6976 is a United States District Court.[9]

For these reasons, Count II of the October 24, 2008 Complaint is dismissed for lack of subject matter jurisdiction. *See* RCFC 12(b)(1).

**V.   THE RESOLUTION OF THE GOVERNMENT'S DECEMBER 23, 2008 MOTION TO DISMISS, PURSUANT TO RCFC 12(b)(6).**

Since the Government's Motion to Dismiss pursuant to RCFC 12(b)(1) is granted, the court need not address the merits of the Government's alternative RCFC 12(b)(6) challenge. *See* Gov't Mot. at 14; *see also* 3/12/09 TR at 7-12, 17-19.

**VI.   CONCLUSION**.

For these reasons, the Government's December 23, 2008 Motion To Dismiss is granted and the October 24, 2008 Complaint is dismissed.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[9] Of course, a federal district court will be confronted with the issue that the Defense Authorization Act for Fiscal Year 1998 provided the Secretary of the Navy with *discretionary* authority to "lease the real property containing the dairy farm, and any improvements and personal property thereon, to such persons and under such terms as the Secretary considers appropriate." 10 U.S.C. § 6976(b). Therefore, the Government was under no duty to lease the property for any purpose.