# In the United States Court of Federal Claims

No. 08-768C
Filed: January 11, 2011
**TO BE PUBLISHED**

| | |
|---|---|
| ************************************* | Administrative Dispute Resolution Act of |
| * |    1996, 28 U.S.C. § 1491(b); |
| * | Bid Protest; |
| * | Breach of Duty of Fair and Honest |
| * |    Consideration; |
| RESOURCE CONSERVATION   * | Defense Authorization Act for Fiscal Year |
| GROUP, LLC,    * |    1998, 10 U.S.C. § 6976(a), (b)(2); |
| * | Department of the Navy Regulation, |
|    Plaintiff,    * |    32 C.F.R. § 736.1; |
| * | Federal Property and Administrative |
| * |    Services Act of 1949, 40 U.S.C. §§ 101- |
| v.    * |    1315; |
| * | Federal Management Regulations, |
| * |    41 C.F.R. §§ 102-2.10, 102-71.5, 102- |
| UNITED STATES,    * |    71.20; |
| * | Implied-In-Fact Contract; |
|    Defendant.    * | Motion to Dismiss, RCFC 12(b)(6); |
| * | Naval Dairy Farm, 10 U.S.C. § 6976; |
| * | Notice of Federal Regulations, 44 U.S.C. § |
| * |    1507; |
| * | Tucker Act, 28 U.S.C. § 1491(a)(1). |
| ************************************* | |

**Warren K. Rich**, Rich & Henderson, P.C., Annapolis, Maryland, Counsel for Plaintiff.

**Christopher Andrew Bowen**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge*.

**I.   RELEVANT FACTS.**[1]

In 1910, a typhoid fever epidemic swept through Annapolis, Maryland, affecting several United States Naval Academy ("Naval Academy") midshipmen.  *See* Michael Janofsky, *Midshipmen To Get Milk Through Middleman*, N.Y. TIMES, July 19, 1998, Section 1, at 16.

---

[1] The facts herein previously were discussed in *Resource Conservation Group, LLC* v. *United States Department of Navy*, 86 Fed. Cl. 475 (2009) ("*RCG I*").

The epidemic was traced to a local milk distributor. *Id*. In response, the United States Congress authorized the Naval Academy to establish and operate a dairy. *Id*. In 1913, the Naval Academy purchased land in Gambrills, Maryland ("the Dairy Farm Property"), fifteen miles from the Naval Academy. *Id*. Over time, the Naval Academy dairy operation expanded, and consumption reached almost 1,000 gallons of milk per day. *Id*.

In the 1990's, the Naval Academy determined that it would be less expensive to purchase milk commercially. *Id*.; *see also* Defense Authorization Act for Fiscal Year 1998, 10 U.S.C. § 6976(a) (codifying the Naval Academy's authority to "terminate or reduce the dairy or other operations conducted at the Naval Academy dairy farm located in Gambrills, Maryland[,]" so long as its "rural and agricultural nature" is maintained). From 2000 to January 2005, the Naval Academy leased the Dairy Farm Property to Horizon Organic Holding Corp., a Boulder, Colorado-based milk producer. *See* Elizabeth Leis, *What's in Farm's Future? Organic Maryland Sunrise Farm Wants to Stay*, MD. GAZETTE, April 15, 2006, at C1.

On November 28, 2005, the United States Department of the Navy ("the Navy") issued a Request of Interest, No. LO-10019, to solicit proposals to lease the Dairy Farm Property. Compl. ¶ 5. On January 16, 2006, Resource Conservation Group, LLC ("Plaintiff" or "RCG") expressed an interest in leasing the Dairy Farm Property.[2] Pl. Ex. 1. Thereafter, the Navy issued a Notice of Availability for Lease, No. N4008007RP00005 ("the Solicitation"), requesting all bids be submitted by March 19, 2007. Gov't Ex. at 1, 8.

On February 6, 2007, RCG and other interested bidders were invited to tour the Dairy Farm Property. Gov't Ex. at 13, 15. On February 27, 2007, RCG again inspected the Dairy Farm Property "to survey and test the area for the presence of sand and gravel." Compl. ¶ 6; *see also* Joshua Stewart, *Soil Surveyed at Former Dairy*, THE CAPITAL, Feb. 28, 2007, at B1 (local newspaper article discussing RCG's site survey). Thereafter, RCG prepared a site analysis, produced mining plans, and submitted a formal lease proposal prior to the March 19, 2007 deadline. Compl. ¶ 6. The proposal stated that RCG planned to mine the Dairy Farm Property for sand and gravel. *Id*.

On April 30, 2007, the Navy's Contracting Officer for the Solicitation ("CO") informed RCG that its proposed "activities and transactions . . . do not fall within the scope of the [S]olicitation because they constitute the disposal of real property," prohibited by section 6976(a)(2)(A) of Title 10 of the United States Code. Pl. Ex. 2; *see also* 10 U.S.C. § 6976(a)(2)(A) (providing that "the real property containing the dairy farm . . . may not be declared to be excess real property . . . or otherwise disposed of by the Navy"). In addition,

---

[2] The Expression of Interest was made on behalf of the Chaney-Reliable Joint Venture, comprised of Chaney Enterprises and the Reliable Contracting Company. Pl. Ex. 1. Subsequently, the Chaney-Reliable Joint Venture was organized as the Resource Conservation Group, LLC. *See* Gov't Mot. at 2 n. 2.

federal regulations specify that "embedded sand and gravel constitute real property."[3]  Pl. Ex. 2. Therefore, RCG's proposal could not be considered.  *Id*.

On June 4, 2007, Anne Arundel County, the county where Dairy Farm Property is located, announced that the Navy had selected the county "for exclusive lease negotiations for the U[nited] S[tates] Naval Academy Dairy Farm."  Anne Arundel County website, accessible at http://www.aacounty.org/News/Archive2007/DairyFarmDeal.cfm (last visited Jan. 7, 2011).

RCG requested a debriefing that was held on September 13, 2007.  Compl. ¶ 9.  At the debriefing, RCG reiterated the intention to "use the property for sand and gravel mining."  *Id*.  The Navy responded that, because disposal of real property was prohibited by 10 U.S.C. § 6976, "the Navy was under no obligation to tell a proposed 'bidder' that its bid would not qualify for review or evaluation."  Compl. ¶ 9.

On January 17, 2008, the Navy and Anne Arundel County signed a "30-year lease agreement for the county's use and preservation of the U.S. Naval Academy Dairy Farm."  Anne Arundel County website, accessible at http://www.aacounty.org/RecParks/parks/dairyfarm/news/lease.cfm (last visited Jan. 7, 2011).

## II.   RELEVANT PROCEDURAL HISTORY.

### A.   Before The United States Court Of Federal Claims.

On October 24, 2008, RCG filed a Complaint in the United States Court of Federal Claims alleging two causes of action: breach of an implied contract of fair and honest consideration and violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Compl. ¶¶ 14-20.

On March 31, 2009, the court issued a Memorandum Opinion And Final Order that dismissed the October 24, 2008 Complaint, pursuant to RCFC 12(b)(1).  *See RCG I*, 86 Fed. Cl. at 480-87.  As to the allegations in Count I regarding breach of an implied contract, the court held that the United States Court of Federal Claims did not have jurisdiction to adjudicate this claim under either section 1491(a)(1) or section 1491(b)(1) of Title 28 of the United States Code.  *Id*. at 483-86.  The court determined that the United States Court of Federal Claims' jurisdiction to review bid protests as implied-in-fact contracts under section 1491(a)(1) did not survive the enactment of the Administrative Dispute Resolution Act of 1996 (''ADRA''), Pub. L. No. 104–

---

[3] Section 102.71.20 of the Federal Management Regulations provides:

> Real Property means . . . [s]tanding timber and *embedded gravel, sand, or stone* under the control of any Federal agency, whether designated by such agency for disposition with the land or by severance and removal from the land, excluding timber felled, and gravel, sand, or stone excavated by or for the Government prior to disposition.

41 C.F.R. § 102-71.20 (2006) (emphasis added).

320, § 12, 110 Stat. 3870, 3874–76 (1996).  *RCG I*, 86 Fed. Cl. at 483-85.  In addition, the court determined that "28 U.S.C. § 1491(b)(1) does not authorize the adjudication of bid protests concerning land leases where the Government is the lessor."  *Id*. at 486.

As to Count II of the October 24, 2008 Complaint, alleging a violation of the APA, the court determined that "the only forum that can adjudicate [RCG's] challenge . . . is a United States District Court."  *Id.* at 487.  Since the court held that it did not have jurisdiction to adjudicate the claims alleged in the October 24, 2008 Complaint, the court did not address the Government's Motion To Dismiss pursuant to RCFC 12(b)(6).  *Id*.

**B.     Before The United States Court Of Appeals For The Federal Circuit.**

On March 1, 2010, the United States Court of Appeals for the Federal Circuit issued an Opinion, affirming that the United States Court of Federal Claims does not have jurisdiction under 28 U.S.C. § 1491(b)(1) to adjudicate Count I of the October 24, 2008 Complaint.  *See Resource Conservation Group, LLC* v. *United States*, 597 F.3d 1238, 1247 (Fed. Cir. 2010) ("*RCG II*").  Our appellate court held that "Congress intended the [Section] 1491(b)(1) jurisdiction [provided by ADRA] to be exclusive where 1491(b)(1) provided a remedy (in procurement cases)."  *Id.* at 1246.

In nonprocurement bid protests, however, where section 1491(b)(1) does not provide a remedy, the United States Court of Appeals for the Federal Circuit held that the United States Court of Federal Claims' "implied-in-fact jurisdiction [under 28 U.S.C. § 1491(a)(1)] . . . survived the enactment of [section] 1491(b)(1)."  *Id.* at 1246.

Therefore, our appellate court "conclude[d] that the [United States] Court of Federal Claims . . . had jurisdiction [to adjudicate Count I of the October 24, 2008 Complaint] under section 1491(a)(1)[,] because the implied-in-fact contract jurisdiction in nonprocurement cases that existed prior to 1996 survived the enactment of the ADRA."  *RCG II*, 597 F.3d at 1247.  Accordingly, the case was remanded for further proceedings.  *Id*.  On June 1, 2010, the mandate issued.

**C.     Remand Proceedings Before The United States Court Of Federal Claims.**

On September 16, 2010, the court convened a status conference to ascertain whether the parties wanted to submit any supplemental briefing regarding the Government's pending Motion To Dismiss, pursuant to RCFC 12(b)(6).  On September 30, 2010, Plaintiff filed a Supplemental Memorandum ("Pl. Supp.").

On October 18, 2010, the Government filed a Supplemental Reply ("Gov't Supp.").  On October 21, 2010, Plaintiff filed a Motion For Leave To File Sur-Reply Memorandum.  On that same date, the Government filed a Response.  On October 22, 2010, Plaintiff filed a Reply.  On that same date, the court issued an Order, granting Plaintiff's Motion For Leave.  On October 28, 2010, Plaintiff filed a Sur-Reply ("Pl. Sur-Reply").

### III.  DISCUSSION.

#### A.  Standard For Decision On A Motion To Dismiss, Pursuant to RCFC 12(b)(6).

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  In order to survive a motion to dismiss, however, the court "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570; *see also Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant."  *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

#### B.  The Government's December 23, 2008 Motion To Dismiss Pursuant To RCFC 12(b)(6).

Count I of the October 24, 2008 Complaint alleges that the Navy "created an implied contract of honest and fair consideration of RCG's bid by inducing RCG to prepare a bid and by inviting RCG to bid, knowing the substantial requirements of its bid proposal [and] knowing that RCG would propose a sand and gravel mine operation[.]"  Compl. ¶ 15.  Therefore, it must be "necessarily implied that the Navy promised to give RCG's bid a fair and impartial consideration."  *Id*.  Count I also alleges that "[t]he Navy breached the implied contract to judge honestly and fairly all bids submitted in response to the solicitation[,] by disqualifying RCG with information that [the Navy] knew or should have known, but failed to disclose to RCG, before RCG incurred the expenses of composing and submitting the formal proposal."  *Id*. ¶ 16.

The gravamen of Count I is that the Navy misconstrued 10 U.S.C. § 6976,[4] by interpreting it to prohibit sand and gravel mining at the Dairy Farm Property.  Compl. ¶ 15.

---

[4] Section 6976 of Title 10 of the United States Code, titled "Operation of Naval Academy dairy farm," states:
  (a) Discretion regarding continued operation. --
   (1) Subject to paragraph (2), the Secretary of the Navy may terminate or reduce the dairy or other operations conducted at the Naval Academy dairy farm located in Gambrills, Maryland.
   (2) Notwithstanding the termination or reduction of operations at the Naval Academy dairy farm under paragraph (1), the real property containing the dairy farm (consisting of approximately 875 acres) –
     (A) may not be declared to be excess real property to the needs of the Navy or transferred or otherwise disposed of by the Navy or any Federal agency; and

Even if 10 U.S.C. § 6976 prohibited these activities, RCG is entitled to bid preparation costs, because the Navy violated the "obligation of fair dealing," by failing to apprise all potential bidders of its interpretation of 10 U.S.C. § 6976.  Compl. ¶ 16.

### 1. The Government's Argument.

The Government argues that the October 24, 2008 Complaint failed to state a claim upon which relief may be granted.  The Navy was required under 10 U.S.C. § 6976 to reject RCG's bid as non-responsive, because the Navy "could not legally lease the property to a contractor [that] intended to dispose of the embedded sand and gravel." Gov't Mot. at 12.

In addition, the Navy had no legal duty to inform RCG, prior to the submission of its bid, that its proposed use was non-responsive, "as it could not possibly tell every potential bidders [sic] about what would and would not be acceptable." Gov't Mot. at 14. Under the implied contract of fair and honest consideration, the Navy only had the duty to fairly and honestly consider RCG's bid. Gov't Supp. at 7.  In this case, "the Navy correctly interpreted [10 U.S.C. § 6976], [and] fulfilled its obligations pursuant to the implied contract by fairly and honestly reviewing RCG's bid and rejecting it for being impermissible under the statute." *Id*.

Likewise, RCG's claim that the Navy breached an implied contract with RCG under the doctrine of superior knowledge must fail, because RCG "could have discovered" applicable regulations governing the Navy's disposal of real estate that were publically available. Gov't Mot. at 13. In *John Massman Contracting Co.* v. *United States*, 23 Cl. Ct. 24 (1991), the United States Claims Court held:

> The government must disclose superior knowledge which is vital to performance of the contract, but which is unknown and reasonably is not available to the contractor.  But there is no duty to disclose where the information reasonably is available.

*Id*. at 32 (internal citations omitted).

---

           (B) shall be maintained in its rural and agricultural nature.
  (b) Lease authority. --
        (1) Subject to paragraph (2), to the extent that the termination or reduction of operations at the Naval Academy dairy farm permit, the Secretary of the Navy may lease the real property containing the dairy farm, and any improvements and personal property thereon, to such persons and under such terms as the Secretary considers appropriate.  In leasing any of the property, the Secretary may give a preference to persons who will continue dairy operations on the property.
        (2) Any lease of property at the Naval Academy dairy farm shall be subject to a condition that the lessee maintain the rural and agricultural nature of the leased property.

10 U.S.C. §§ 6976 (a), (b).

In addition, the Solicitation "provided a means through which potential bidders could submit questions to the Navy for a response." Gov't Mot. at 13; *see also* Gov't Ex. at 16-22 (amendments to the Solicitation establishing the procedure for questions posed by potential bidders to be answered by the Navy). Therefore, even assuming that the Government had superior knowledge about the Dairy Farm Property and the law governing its use, that knowledge readily was available to RCG. Gov't Mot. at 13.

### 2. Plaintiff's Response.

RCG responds that the Navy violated the duty to consider all responsive proposals fairly and honestly because the Navy knew RCG intended to use the Dairy Farm property for sand and gravel mining, "but . . . waited to inform [RCG] that its bid would not be considered until after [RCG] submitted the bid proposal and incurred bid preparation and proposal costs." Pl. Opp. at 4 (citation omitted).

Moreover, the Navy "active[ly] misrepresent[ed] . . . the uses the Navy would allow on the property." Pl. Opp. at 4. Specifically, Section 3.4 of the Solicitation, titled "Use Restrictions," did not mention that mining was a prohibited use of the Dairy Farm Property. Gov't Ex. at 5-6. Likewise, the Appendix to the Solicitation listed specific prohibited uses, but mining was not listed as a prohibited use. Pl. Opp. Ex. Therefore, at the time the Navy issued the Solicitation, it knew, or should have known, "that leasing the [Dairy Farm P]roperty for sand and gravel mining would be contrary to the law[.]" Pl. Opp. at 4. But the Navy did not inform RCG of its interpretation of 10 U.S.C. § 6976 until after it incurred bid preparation costs. *Id*.

The Navy, however, "refuses to even indicate whether it came upon this interpretation [of Section 6976] before or after the submission of the bid." Pl. Supp. at 5. If the Navy interpreted 10 U.S.C. § 6976 prior to the submission of RCG's bid, it "withheld information which was not readily available to RCG." *Id*. at 6. In the alternative, if the Navy "came upon this interpretation only after the submission of bids, it adopted an after the fact rationalization to turn down RCG's submission[.]" *Id*. Of course, any post-hoc rationalization by the Navy "would be tantamount to an act of bad faith, clearly arbitrary and capricious towards RCG as well as inconsistent with the terms of its own [S]olicitation." *Id*. at 6-7.

RCG further argues that it "could not have discovered the Navy's interpretation from simply reading the laws and regulations." Pl. Opp. at 5. To the contrary, RCG "had no reason to suspect sand and gravel mining was prohibited or submit a question as to this specific issue[,] because in all of its interactions with the Navy, the Navy encouraged it to submit a bid." *Id*. at 6.

RCG concedes, however, that the Navy did not have a duty to inform every potential bidder about what would be acceptable. Pl. Opp. at 6. On the other hand, because the Navy had "numerous communications with [RCG] regarding [its proposed] use," the Navy's duty arose by virtue of the nature and number of these communications. *Id*.

Finally, RCG argues that the Navy "erroneously interpreted 10 U.S.C. § 6976 to exclude mining." Pl. Opp. at 7. The Solicitation only requires potential bidders to "[p]rovide information on how the proposal satisfies the legal requirement to maintain the [Dairy Farm

Property] in its rural and agricultural nature."[5]  Gov't Ex. at 9.  Therefore, RCG reasons that "[t]he protective purpose apparent in both 10 U.S.C. § 6976 and the bid solicitation to maintain the rural and agricultural nature of the property shows that the non-disposal language is only intended to prevent fragmentation of the 875 acre [Dairy Farm Property]."  Pl. Opp. at 9.  RCG's proposed use "would simply extract the minerals and then reclaim the property, which would not disturb the rural character of the dairy farm by increasing the population or commercial and residential buildings in the area."  *Id*.  Therefore, RCG's bid proposal was consistent with 10 U.S.C. § 6976.  Pl. Opp. at 9-10.

Although RCG concedes that "timber, embedded gravel, sand, or stone" are recognized as "real property" under 41 C.F.R. § 102-71.20, "real property" is also defined as "any interest in land, together with the improvements, structures, and fixtures[.]"  41 C.F.R. § 102-71.20 (2006).  Therefore, if the Navy's interpretation of section 6976 is correct, then leasing the Dairy Farm Property for any purpose would be considered disposal of real property.  Pl. Opp. at 11.  Therefore, RCG concludes that since the Navy has the authority to lease the Dairy Farm Property, logically, it must also have the right to "'dispose' [of] mining rights or other types of interests consistent with 10 U.S.C. § 6976."  *Id*. at 12.

### 3.    The Government's Reply.

The Government replies that, if the Navy's interpretation of 10 U.S.C. § 6976 is correct, RCG cannot recover bid preparation costs, because none of "[t]he precedents cited by [RCG] . . . support the extraordinary principle that an agency which correctly interprets its statute to exclude a bid is liable for the bid preparation costs of a non-responsive bid."  Gov't Reply at 5.  In fact, none of the cases cited by RCG in support are precedential.  *Id*.; *see also* Pl. Opp. at 3-6 (citing *D.F.K. Enter., Inc.* v. *United States*, 45 Fed. Cl. 280 (1999); *City of Cape Coral* v. *Water Servs. of America, Inc.*, 567 So. 2d 510 (Fla. Dist. Ct. App. 1990); *State Mech. Contractors, Inc.* v. *Village of Pleasant Hill*, 477 N.E.2d 509 (Ill. App. Ct. 1985)).  Each of these cases is cited for the proposition that a government agency is liable for an unsuccessful bidder's bid preparation costs, if the agency made a crucial mistake in connection with the bid.  *See, e.g.*, *D.F.K.*, 45 Fed. Cl. at 282-83 (holding an agency provided incorrect information in response to a bidder's question during the solicitation process); *see also City of Cape Coral*, 567 So.2d at 512 (holding a city erroneously interpreted a statute, inducing a bid from plaintiff, who was not eligible for the contract award under the statute); *State Mech. Contractors*, 477 N.E.2d at 511-13 (holding an unsuccessful bidder that submits the best responsive bid may recover preparation costs, even if a non-responsive bidder won the award).  In this case, however, the Navy did not make a mistake in rejecting RCG's bid as non-responsive, because the proposed use did not comply with 10 U.S.C. § 6976.  Gov't Reply at 9.

---

[5] Section 6976(b)(2) provides:

> Any lease of property at the Naval Academy dairy farm shall be subject to a condition that the lessee maintain the rural and agricultural nature of the leased property.

10 U.S.C. § 6976(b)(2).

The Navy's interpretation of 10 U.S.C. § 6976 was correct, as the statutory language "prohibits the Navy from disposing of the real property in any way outside of a lease." Gov't Reply at 10. Nothing therein supports an interpretation that the statute seeks to prevent subdivision of the Dairy Farm Property. *Id.* at 9. In addition, applicable federal regulations support the Navy's interpretation of 10 U.S.C. § 6976. *Id.* at 10. Likewise, federal property management regulations specifically define "embedded sand and gravel," as real property. *See* 41 C.F.R. § 102-71.20. RCG "does not dispute the applicability of these regulations." Gov't Supp. at 3.

### 4. The Court's Resolution.

#### a. The Department Of The Navy Correctly Rejected Plaintiff's Bid As Non-Responsive.

The primary issue is the reasonableness of the Navy's interpretation of 10 U.S.C. § 6976, that in relevant part, provides:

> [T]he real property containing the dairy farm (consisting of approximately 875 acres) – may not be declared to be excess real property to the needs of the Navy or transferred or otherwise disposed of by the Navy or any Federal agency.

10 U.S.C. § 6976(a)(2)(A).

Title 10 of the United States Code does not define the term "real property." *See* 10 U.S.C. § 101 (providing definitions of certain terms for Title 10); 10 U.S.C. § 5001 (providing definitions of certain terms for Subtitle C of Title 10 (10 U.S.C. §§ 5001-7913.0) -- "Navy and Marine Corps"). Regulations issued by the Department of the Navy, however, provide:

> Real and personal property under the jurisdiction of the Department of the Navy . . . may be disposed of under the authority contained in the . . . Federal Property Act [40 U.S.C. §§ 101-1315]. The Federal Property Act places the responsibility for the disposition of excess and surplus property located in the United States . . . with the Administrator of General Services. . . . Accordingly, in disposing of its property, the Department of the Navy is subject to applicable regulations of the Administrator of General Services[.]

32 C.F.R. § 736.1 (2006).[6]

The Federal Management Regulations,[7] implicated by 32 C.F.R. § 736.1 (2006), were issued by the General Services Administration ("GSA") to "[prescribe] policies concerning

---

[6] Since 2006, the Code of Federal Regulations ("CFR") has been updated annually. On April 30, 2007, the Navy informed RCG of its interpretation of 10 U.S.C. § 6976. Therefore, the court must adjudicate the Navy's interpretation of 10 U.S.C. § 6976, as of the July 1, 2006 revision of the CFR, applicable on April 30, 2007.

[7] The Federal Management Regulations can be found at 41 C.F.R. §§ 102-1 – 102-94.

property management and related administrative activities." 41 C.F.R. § 102-2.10 (2006); s*ee also* 41 C.F.R. § 102-71.5 (2006) ("GSA's real property policies contained in . . . parts 102–72 through 102–82 of this chapter apply to Federal agencies . . . operating under, or subject to, the authorities of the Administrator of General Services. These policies cover the acquisition, management, utilization, and disposal of real property by Federal agencies[.]").

Federal Management Regulations define "real property" as follows:

> Standing timber and embedded gravel, sand, or stone under the control of any Federal agency, whether designated by such agency for disposition with the land or by severance and removal from the land, excluding timber felled, and gravel, sand, or stone excavated by or for the Government prior to disposition.

41 C.F.R. § 102-71.20 (2006).

Therefore, the Navy correctly determined that the embedded gravel and sand on the Dairy Farm Property site were "real property," and that leasing the Dairy Farm Property to mine embedded gravel and sand would dispose of "the real property containing the dairy farm." 10 U.S.C. § 6976(a)(2)(A).

RCG's contention that 10 U.S.C. § 6976 is intended to prevent "fragmentation" of the Dairy Farm Property has no support in the statutory language, legislative history, applicable regulations, or the record. In addition, RCG's argument that the RCG's proposed use would maintain the land's rural and agricultural nature is irrelevant. Section 6976 requires that "[a]ny lease of property at the Naval Academy dairy farm shall be subject to a condition that the lessee maintain the rural and agricultural nature of the leased property." 10 U.S.C. § 6976(b)(2). RCG's proposal, however, was not rejected for failing to maintain the rural and agricultural nature of the property, but because the Navy "determined that the activities and transactions proposed [by RCG] do not fall within the scope of the [S]olicitation[,] because they constitute[d] the disposal of real property." Pl. Ex. 2. For this reason, the Navy's letter notifying RCG that its bid was non-responsive does not mention the requirement that the "rural and agricultural nature" of the Dairy Farm Property be maintained.

For these reasons, the court has determined that the Navy correctly rejected RCG's bid as non-responsive for failing to comply with 10 U.S.C. § 6976.

> **2.     The Department Of The Navy Did Not Breach An Implied Contract With Plaintiff.**

The October 24, 2008 Complaint alleges that, even if the Navy correctly interpreted 10 U.S.C. § 6976 and properly rejected RCG's bid as non-responsive, nevertheless, the Navy breached an implied-in-fact contract by not complying with the "obligation of fair dealing to apprise all potential bidders of its interpretation regarding the merits of the bid." Compl. ¶ 16.

In *Southfork Systems, Inc.* v. *United States*, 141 F.3d 1124 (Fed. Cir. 1998), the United States Court of Appeals for the Federal Circuit held:

> The ultimate standard for determining whether an unsuccessful bidder is entitled to relief on the ground that the [G]overnment breached the implied-in-fact contract to consider all bids fairly and honestly is whether the [G]overnment's conduct was arbitrary and capricious.

*Id.* at 1132 (citation omitted).

In adjudicating whether an implied-in-fact contract was breached on these grounds, the following four factors were identified for the trial court to consider:

> (1) subjective bad faith on the part of the [G]overnment; (2) absence of a reasonable basis for the administrative decision; (3) the amount of discretion afforded to the procurement officials by applicable statutes and regulation; and (4) proven violations of pertinent statutes or regulations.

*Id.* (citations omitted). Importantly, "there is no requirement . . . that each of the factors must be present in order to establish arbitrary and capricious action by the [G]overnment." *Prineville Sawmill Co., Inc.* v. *United States*, 859 F.2d 905, 911 (Fed. Cir. 1988).

As to the first factor, the October 24, 2008 Complaint does not allege, nor has the court otherwise found in the record, any evidence of bad faith on the part of the Navy. *See Galen Medical Associates, Inc.* v. *United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) ("[W]hen a bidder alleges bad faith, in order to overcome the presumption of good faith on behalf of the [G]overnment, the proof must be almost irrefragable. Almost irrefragable proof amounts to clear and convincing evidence.") (internal quotations and citations omitted). As a matter of law, the allegations in the October 24, 2008 Complaint that the Navy "erroneously interpreted 10 U.S.C. § 6976" (Compl. ¶ 11) and failed to disclose "information that it knew or should have known" (Compl. ¶ 16) are not sufficient to "overcome the presumption of good faith on behalf of the [G]overnment." *Galen Med. Assocs.*, 369 F.3d at 1330.

With respect to the second factor, the court has determined that the Navy's interpretation of 10 U.S.C. § 6976 was correct and that the Navy had a reasonable basis for the rejection of RCG's bid as non-responsive.

Regarding the third factor, the predecessor to our appellate court has held that "the greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious." *Burroughs Corp.* v. *United States*, 617 F.2d 590, 597 (Ct. Cl. 1980). Section 6976(b)(1) provides:

> [T]he Secretary of the Navy *may* lease the real property containing the dairy farm, and any improvements and personal property thereon, to such persons and *under such terms* as the Secretary considers appropriate.

10 U.S.C. § 6976(b)(1) (emphasis added). Therefore, the Secretary had complete discretion to reject RCG's proposed use.

Finally, since the court has determined that the Navy's interpretation of 10 U.S.C. § 6976 was correct, Plaintiff cannot prove that the Navy violated any statutes or regulations in connection with the Solicitation.

In the alternative, RCG argues that the Navy breached the implied-in-fact contract by withholding knowledge of its interpretation of 10 U.S.C. § 6976. *See* Compl. ¶ 16; *see also* Pl. Opp. at 4-6; Pl. Supp. at 7. The United States Court of Appeals for the Federal Circuit, however, in *AT&T Communications, Inc.* v. *Perry*, 296 F.3d 1307, 1312 (Fed. Cir. 2002), has held that to prevail on such a claim, a plaintiff must

> produce specific evidence that it (1) undertook to perform without vital knowledge of a fact that affects performance costs or direction, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the [G]overnment failed to provide the relevant information.

*Id.* at 1312 (citation omitted).

RCG claims the Navy withheld its interpretation of 10 U.S.C. § 6976, that prohibited the mining of embedded sand and gravel on the Dairy Farm Property, from RCG. The Solicitation, however, in section 3.4 -- "Use Restrictions," provides: "The use of the [Dairy Farm Property] shall be in compliance with 10 U.S.C. § 6976[.]" Gov't Ex. at 5. In addition, Appendix A to the Solicitation provides the text of 10 U.S.C. § 6976 (Gov't Ex. at 2), and Appendix F identifies "[a]dditional use restrictions" (Gov't Ex. at 6).

As a matter of law, "[t]he parties [in a government contract action] are charged with knowledge of law and fact appropriate to the subject matter, and reasonable professional competence in reading and writing contracts is presumed." *Turner Const. Co., Inc.* v. *United States*, 367 F.3d 1319, 1321 (Fed. Cir. 2004) (citation omitted). Although the Navy did not cite the specific applicable regulations nor the Navy's internal interpretation of the statute in the Solicitation, RCG is held accountable for "knowledge of law . . . appropriate to the subject matter" and "reasonable professional competence in reading" the contract. *Id*. The Navy, therefore, provided RCG with all the relevant information required to prepare a bid. *See* 44

U.S.C. § 1507 ("Unless otherwise specifically provided by statute, [the] filing of [an Executive order or a rule or regulation issued by a federal agency in the Federal Register] . . . is sufficient to give notice of the contents of the document to a person subject to or affected by it."); *see also Federal Crop Ins. Corp.* v. *Merrill*, 332 U.S. 380, 384 ("Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.") (citation omitted). Moreover, if RCG had any question as to the applicable regulations, RCG could have asked the Navy for clarification prior to submitting its bid. *See* Gov't Ex. at 16-22 (Amendments 2-4 to the Solicitation, containing questions by bidders concerning the Solicitation and the Navy's responses to those questions). RCG did not do so.

Accordingly, since RCG has failed to establish the requirements of a breach of implied contract with the Navy, the court has determined that the Navy did not breach an implied contract of good faith and fair dealing.

### IV.     CONCLUSION.

For the aforementioned reasons, the Government's December 23, 2008 Motion To Dismiss is granted. The Clerk of the United States Court of Federal Claims is directed to dismiss the October 24, 2008 Complaint, pursuant to RCFC 12(b)(6), with prejudice.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**